IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

04 JUN 25 PM 2:57

CLERK ALBUQUERQUE

VICTORIA APODACA,

    Plaintiff,

v.

DISCOVER FINANCIAL SERVICES and
EQUIFAX CREDIT INFORMATION SERVICES, INC.,

    Defendants.

CIV - 04 - 0717 MCA WDS

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1. Plaintiff Victoria Apodaca's consumer credit report contains negative credit entries for another person. She provided to Defendants irrefutable proof that the Discover credit card account that Defendants report as "included in bankruptcy" belongs to another Victoria Apodaca with a different social security number. Nevertheless, Defendants obstinately refuse to correct their damaging and inaccurate credit reporting and refuse to undertake a genuine and reasonable reinvestigation into Ms. Apodaca's dispute.

### Jurisdiction and Venue

2. This Court has jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681p, and under 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367. The events took place in this District.

### Parties

3. Plaintiff Victoria Apodaca resides in Moriarty, New Mexico. She is a "consumer" as defined by FCRA, 15 U.S.C. § 1681a(c), and as defined by the New Mexico Credit Bureaus Act ("CBA"), NMSA 1978 § 56-3-1.

4. Defendant Discover Financial Services is a foreign corporation who is a "furnisher of information" as contemplated by FCRA, §1681s-2(b), who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions.

5. Defendant Equifax Credit Information Services, Inc. is a foreign corporation which is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f) and a "credit bureau" as defined by the CBA, NMSA 1978 § 56-3-1. Equifax assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. It uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.

**Facts**

6. In May, 2003, Ms. Apodaca's son applied for financing to buy his first home. Ms. Apodaca applied to be a co-buyer on her son's loan so that he could qualify for lower payments.

7. In the process Ms. Apodaca discovered that Equifax was reporting that she had filed for bankruptcy and was delinquent on several accounts. These negative entries drastically reduced her credit worthiness and credit score.

8. The two other national credit reporting agencies, Trans Union, L.L.C., and Experian Information Solutions, Inc., did not report this negative information.

9. Ms. Apodaca discovered that another Victoria Apodaca – Victoria Lopez Apodaca – had declared bankruptcy and defaulted on accounts.

2

10. In May, 2003, Ms. Apodaca contacted Equifax and told Equifax that it was reporting another person's bankruptcy and delinquent accounts on her credit report. She requested that Equifax reinvestigate and correct her credit report.

11. One account that Ms. Apodaca specifically disputed involved a Discover credit card. This credit card belonged to Victoria Lopez Apodaca. Equifax was reporting the Discover credit card account as "included in bankruptcy."

12. Beginning in June, 2003, Ms. Apodaca provided Equifax with the social security number of Victoria Lopez Apodaca, to prove the bankruptcy and the negative accounts did not belong to her. She provided Equifax with a copy of her social security card, a copy of a pay stub from her job as a teacher at Moriarty High School and a copy of her driver's license. She provided a copy of these documents numerous times to different people at Equifax, at Equifax's request.

13. In a letter dated July 15, 2003, Ms. Apodaca told Equifax:

> I have signed a purchase agreement to purchase a home and I am under a time deadline, so your prompt attention would be greatly appreciated.

14. On July 30, 2003, in response to Ms. Apodaca's disputes, Equifax added Ms. Apodaca's social security number to the credit file it maintained on Victoria Lopez Apodaca. It also provided Ms. Apodaca with a copy of Victoria Lopez Apodaca's credit report.

15. In a letter dated August 8, 2003, Ms. Apodaca again told Equifax why it was crucial that it correct its inaccurate reporting.

> Please take care of this matter as quickly as possible. I have been trying to take care of my credit file with Equifax since May. Like I stated in my last letter, I have signed a purchase agreement for a home and my credit report has caused problems for me in attaining financing. Your prompt attention would be greatly appreciated.

16. Ms. Apodaca provided documentary proof to Equifax from the United States District Court for New Mexico, Bankruptcy Division. These documents showed that she had never filed bankruptcy but that Victoria Lopez Apodaca had.

17. In a letter faxed to Equifax during the week of August 11, 2003, Ms. Apodaca again told Equifax why it was crucial that it promptly correct its inaccurate reporting.

> Sonya, I have been trying to clear my credit file with Equifax since May. I have send in letters, verifications (drivers license, pay stubs, social security number etc.) and this matter still isn't cleared up. I am hoping you can take care of this matter ASAP. Please give me a call at [phone number] when you have received this fax and have cleared it from my file. The underwriter for the home is just waiting to have this cleared, so we can sign the paperwork and closed the purchase of our home by this Friday. Thank you Sonya!

18. Ms. Apodaca and her son scheduled to close the mortgage loan on August 15, 2003. They had to cancel the closing because Equifax still had not removed the bankruptcy and delinquent accounts from Ms. Apodaca's credit report.

19. On August 22, 2003, Ms. Apodaca's son closed his mortgage loan without the benefit of having Ms. Apodaca listed as a co-buyer, because Ms. Apodaca's credit score was still so bad that it would be better for him to close by himself than with his mother as co-buyer.

4

20. On September 5, 2003, Equifax reported the results of its reinvestigation into Ms. Apodaca's disputes. It reported to Ms. Apodaca that it had "reviewed the bankruptcy information" and "verified that this item belongs to you." It also reported that it had "researched the credit account" concerning the Discover credit card and had "verified that this item belongs to you." It did not note that Ms. Apodaca disputed the Discover account.

21. On September 18, 2003, Equifax again reported to Ms. Apodaca that it had reinvestigated the bankruptcy and Discover credit card account reported on her credit report. Again it stated that it had "verified that [the items] belongs to you." It did not note that Ms. Apodaca disputed the Discover account.

22. Equifax continued to report the bankruptcy and the Discover credit card account – listing the status of the account as "included in bankruptcy" – on Ms. Apodaca's credit report.

23. In a letter dated October 9, 2003, Ms. Apodaca again disputed the inaccurate information that Equifax continued to report. She again asked Equifax to remove the bankruptcy and the Discover credit card account. Ms. Apodaca again provided Equifax with a copy of her social security card and driver's license to show that the bankruptcy and the Discover credit card account belonged to Victoria Lopez Apodaca, a different person with a different social security number.

24. On November 6, 2003, Equifax again reported to Ms. Apodaca that it had "reviewed the bankruptcy information" and "verified that this item belongs to you." Equifax also reported that it had "researched the credit account" concerning the Discover credit card

and had "verified that this item belongs to you." Also, Equifax reported that "[a]dditional information has been provided" by Discover concerning the credit card account.

25. Equifax continued to report the bankruptcy and the Discover credit card account on Ms. Apodaca's credit report. Equifax now reported the Discover credit card account as a "charged off account" instead of "included in bankruptcy." It did not note that Ms. Apodaca disputed the account.

26. Ms. Apodaca applied for a Wells Fargo credit card. In a letter dated November 26, 2003, Wells Fargo stated that it was

> unable to approve your application at this time for the following reason(s): CONSUMER HAS A BANKRUPTCY ON HIS/HER CREDIT BUREAU.

Wells Fargo stated that it had obtained this information from Equifax.

27. In a letter dated April 2, 2004, Ms. Apodaca again disputed the inaccurate information and asked Equifax to remove the bankruptcy and the Discover credit card account. She again told Equifax that it had merged onto her report the bankruptcy and the Discover credit card account for Victoria Lopez Apodaca, a different person with a different social security number. Plaintiff provided Equifax with the separate social security security numbers for herself and Victoria Lopez Apodaca. She again provided Equifax with documents from the bankruptcy court that showed the bankruptcy belonged to Victoria Lopez Apodaca.

28. Ms. Apodaca also sent a copy of this letter, along with the documents from the bankruptcy court, to Discover.

29. In a form letter dated April 9, 2004, Discover stated:

> We have investigated your recent inquiry. Our records indicate that the above referenced account is correctly reporting under your name as stated in the credit bureau report.

30. On April 29, 2004, Equifax reported to Ms. Apodaca that it had finally deleted the bankruptcy from her credit report. However, Equifax refused to delete the Discover credit card account. Equifax reported that it had "researched the credit account" concerning the Discover credit card and had "verified that this item has been reportedly correctly" and "verified that this item belongs to you."

31. Equifax resumed reporting the Discover credit card account as "included in bankruptcy." It did not note that Ms. Apodaca disputed the account.

32. Upon information and belief, Equifax failed to provide Discover with all relevant information provided by Ms. Apodaca.

33. Equifax failed to review and consider all relevant information submitted by Ms. Apodaca with her repeated disputes.

34. Equifax failed to conduct a genuine and reasonable reinvestigation in response to Ms. Apodaca's repeated disputes concerning the Discover credit card account.

35. Discover failed to review and consider all relevant information submitted by Ms. Apodaca with her repeated disputes concerning the Discover credit card account.

36. Discover failed to conduct a genuine and reasonable reinvestigation in response to Ms. Apodaca's repeated disputes concerning the Discover credit card account.

37. Discover failed to report to Equifax that the information about the Discover credit card account is inaccurate, and it persisted in reporting information that it knew or should have known to be inaccurate and damaging.

38. Equifax persisted in reporting information that it knew or should have known to be inaccurate and damaging.

39. Discover failed to note that Ms. Apodaca disputed the Discover account in reports it made concerning the account after it had received notice of Ms. Apodaca's dispute.

40. If Equifax had conducted a genuine and reasonable reinvestigation into Ms. Apodaca's disputes, it would have removed the bankruptcy and negative accounts belonging to Victoria Lopez Apodaca. Ms. Apodaca could have participated in the loan to purchase a home for her son. The loan would have been at a lower Annual Percentage Rate, with lower monthly payments.

41. Furthermore, due to Equifax's failures, the mortgage company required a higher down payment and required other additional costs be paid at closing. Ms. Apodaca gave $18,000 to her son to cover these higher costs caused by her inability to be a co-buyer on the loan. She borrowed $15,000 of this money, accruing finance charges.

42. If Discover had conducted a genuine and reasonable reinvestigation into Ms. Apodaca's disputes, it would have removed the account belonging to Victoria Lopez Apodaca, which would increase Ms. Apodaca's credit rating. Furthermore, if it had conducted a genuine and reasonable reinvestigation, it would have noted that Ms. Apodaca disputed the Discover account in reports it made concerning the account after it had received notice of Ms. Apodaca's dispute.

43. Ms. Apodaca suffered actual damages, including:

   a. damage to her credit rating;

b. lost opportunities to enter into consumer credit transactions, including the opportunity to be a co-buyer for her son;

c. higher down payment and other additional costs for her son's loan;

d. incurring finance charges on the money she borrowed to pay for these higher costs;

e. denial of credit; and

f. lost time, aggravation, inconvenience, embarrassment and frustration.

### First Claim for Relief: FCRA Violations by Equifax

44. Equifax failed to maintain reasonable procedures to ensure the maximum possible accuracy of the consumer credit information it reported concerning Ms. Apodaca.

45. Equifax failed to review and consider all relevant information submitted by Ms. Apodaca, including unrebutted information; failed to provide Discover with all relevant information provided by Ms. Apodaca; failed to conduct a genuine and reasonable reinvestigation in response to Ms. Apodaca's repeated disputes; persisted in reporting information that it knew or should have known to be inaccurate and damaging; and failed to delete inaccurate information from the credit report.

46. Equifax's actions were willful, or, in the alternative, negligent violations of the FCRA.

47. Ms. Apodaca is entitled to actual damages, punitive damages, costs and reasonable attorney fees.

### Second Claim for Relief: CBA Violations by Equifax

48. Equifax's actions violated the CBA, including but not limited to NMSA 1978 § 56-3-2.

49. Equifax's actions were willful, or, in the alternative, negligent violations of the CBA.

50. Ms. Apodaca is entitled to actual damages, punitive damages, costs and reasonable attorney fees.

### Third Claim for Relief: FCRA Violations by Discover

51. Discover failed to review and consider all relevant information submitted by Ms. Apodaca, failed to conduct a genuine and reasonable reinvestigation in response to Ms. Apodaca's repeated disputes, failed to report to Equifax that the information it reported about the credit card account is inaccurate and persisted in reporting information that it knew or should have known to be inaccurate and damaging.

52. Discover failed to note that Ms. Apodaca disputed the Discover account in reports it made concerning the account after it had received notice of Ms. Apodaca's dispute.

53. Discover's actions are willful or, in the alternative, negligent, violations of the FCRA, including 15 U.S.C. §1681s-2b.

54. Ms. Apodaca is entitled to actual damages, punitive damages, costs and reasonable attorney fees.

### Request for Relief

Ms. Apodaca prays that this Honorable Court:

A. Enjoin Defendants from reporting the Discover credit card account and any reference to bankruptcy on Ms. Apodaca's credit report;

B. Award actual damages;

C. Award punitive damages;

C. Award costs and reasonable attorney fees;

D. Award any further relief this Court deems just.

Respectfully submitted,

FEFERMAN & WARREN, Attorneys for Plaintiff

_____
ROB TREINEN
300 Central Ave., SW, Suite 2000 East
Albuquerque, New Mexico 87102
(505) 243-7773