FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEC 2 2 2004

VICTORIA APODACA,

      Plaintiff,

**CLERK**

v.

No. 04-CV-717 MCA/WDS

DISCOVER FINANCIAL SERVICES and
EQUIFAX INFORMATION SERVICES LLC,

      Defendants.

### PLAINTIFFS' BRIEF IN SUPPORT OF
### MOTION TO COMPEL EQUIFAX TO ANSWER DISCOVERY

**I.    Equifax Refuses to Answer Much of Ms. Apodaca's Written Discovery**

**A.    Nature of the Case**

Plaintiff Victoria Apodaca's consumer credit report contains negative credit entries that belong to another person. Ms. Apodaca provided to Equifax irrefutable proof that her credit report contained information that belong to another person, including the other person's bankruptcy. Nevertheless, Equifax obstinately refused to correct its damaging and inaccurate credit reporting and refused to undertake a genuine and reasonable reinvestigation into Ms. Apodaca's dispute.

As a result, Ms. Apodaca suffered severe damage to her credit rating and lost opportunities to enter into consumer credit transactions. She was denied the opportunity to be a co-buyer on the mortgage loan for her son's first home, which meant a higher down payment and other additional costs for her son's loan. She incurred finance charges on the money she borrowed to pay for these higher costs, suffered denial of credit and lost time, aggravation, inconvenience, embarrassment and frustration.

Equifax's conduct violates the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"). The FCRA requires credit reporting agencies like Equifax to "follow reasonable procedures to assure ***maximum possible accuracy*** of the information" it reports on consumers. *See*, 15 U.S.C. § 1681e(b) (emphasis added). The FCRA also requires Equifax to conduct genuine and reasonable reinvestigations into consumers' disputes concerning the information it reports. *See*, 15 U.S.C. § 1681i.

### B.    Status of Discovery

On November 3, 2004, Ms. Apodaca served her first set of written discovery on Equifax. On December 3, 2004, Equifax served its responses. It refused to answer many of the requests. *See*, Exhibit A, responses. In a five page letter dated December 14, 2004, Ms. Apodaca's counsel requested that Equifax supplement its answers. In the letter, Ms. Apodaca's counsel cited extensive case law that supported Ms. Apodaca's requests. Ms. Apodaca's counsel also followed up with a December 15 letter. *See*, Exhibit B, letters. Equifax refused to respond to these letters.

## II.    Ms. Apodaca Is Entitled to the Identities of Potential Witnesses (Interrogatories Nos. 8, 9, 10, 11, 12 and 14)

In Interrogatories Nos. 8, 9, 10 and 11, Ms. Apodaca requests the identities of Equifax employees who took certain discrete actions on her credit file. Equifax promises to "provide the names of the specific operators by supplement" but does not provide a date certain for when it will provide the promised identities. Ms. Apodaca needs this information because these employees are potential witnesses whom she needs to depose, and the 150 day limit for discovery is running.

In Interrogatory No. 10, Ms. Apodaca requests that Equifax identify the business to which

Equifax sent the "Bankruptcy Dispute Verification Request" (EFX00015). *See*, Exhibit C, Bankruptcy Dispute Verification Request. This document is addressed to the federal bankruptcy court, but states that "NDR courier will pick up." Ms. Apodaca believes that Equifax uses a third party business to collect and verify the public record information – including bankruptcy filings – that it reports on consumer credit reports. Ms. Apodaca seeks the identity of this third party business, because its employees are potential witnesses.

Also, in Interrogatory No. 14, Ms. Apodaca asks Equifax to provide an explanation of each abbreviation used in the documents that Equifax has produced. Equifax promised that if Ms. Apodaca "is more specific and narrowly tailors her interrogatory, Equifax will attempt to answer." In the December 14 letter, Ms. Apodaca requested Equifax to provide an explanation of all abbreviations used in the Bankruptcy Dispute Verification Request, including the full name of the entity referred to as "NDR."[1] In the December 14 letter, Ms. Apodaca requested that Equifax provide the identities of these employee witnesses and the identity of the third party business to which it sent the Bankruptcy Dispute Verification Request, or provide a date certain by which it will produce these identities.[2] *See*, Exhibit B, December 14 letter. Equifax refused to respond.

Equifax reported the results of Ms. Apodaca's numerous disputes in letters signed by

---

[1] Concerning Interrogatory No. 14, Ms. Apodaca also requested that Equifax provide an explanation for all documents referred to in Interrogatory No. 11. Equifax refuses to provide these explanations.

[2] If any of the relevant employees are former employees, Ms. Apodaca requests that Equifax provide all known residential addresses and telephone numbers for the former employee, as well as the former employee's title with Equifax during the transaction which is the subject of this lawsuit, and the former employee's dates of employment and date of birth. The request for this additional information for former employees is set forth in the definition of "identify" or "identity" that Ms. Apodaca provided as part of her discovery requests. This location information will allow Ms. Apodaca to track down former employee witnesses and serve deposition subpoenas on these persons.

"Glenn King." *See*, Exhibit D, letters. Ms. Apodaca cannot depose Mr. King, because Equifax admits that Mr. King "was a person who worked for Equifax but is now deceased." In Interrogatory No. 12, Ms. Apodaca asks Equifax to identify "all persons who participated in any action that resulted" in the "Glenn King" letters. Equifax refuses to identify these potential witnesses. It argues that the request is over broad, unduly burdensome and not relevant.

### A.    Location Information for Employee Witnesses Is Relevant

Ms. Apodaca claims that Equifax violated the FCRA, in part, because it failed to perform reasonable reinvestigations into Ms. Apodaca's disputes. Ms. Apodaca seeks to depose the Equifax employees involved in these reinvestigations as well as the third party business involved in the reinvestigation of the bankruptcy that Equifax reported as belonging to Ms. Apodaca.

Courts, including this Court, allow the discovery of the identities of current and former employees if the employees are potential witnesses with relevant information. *See*, *White v. Allstate*, No. 3-02-CV-1773, 2003 U.S. Dist. LEXIS 7089 at *8 (N.D. Tex. Apr. 15, 2003); *Roberts v. Air Capitol Plating, Inc.*, No. 95-1348, 1997 U.S. Dist. LEXIS 11245 at *4-5 (D. Kan. July 22, 1997); *Salinas v. Karl Malone Corporation – Albuquerque*, No. CV-03-4670 (Bernalillo County District Court June 1, 2004) (Theresa Baca, J.) (Exhibit E); *McGuire-Pike v. Bennett & DeLoney, P.C.*, No. 03-CV-344 (D. N.M. Dec. 30, 2003) (Schneider, J.) (Exhibit F); *Alderete v. Don Chalmers Ford, Inc.*, 02-CV-956 (D. N.M. April 3, 2003) (Torgerson, J.) (Exhibit G); *Lopez v. Zangara Dodge, Inc.*, No. CV-01-8629 (Bernalillo County District Court June 5, 2002) (Lang, J.) (Exhibit H).

### B.    The Requests Are Narrowly Tailored

Ms. Apodaca's requests concerning the identities of Equifax's employees (and the

identity of the third party business involved in the reinvestigation of the bankruptcy that Equifax incorrectly reported) is not over broad. These requests are narrowly tailored to only seek information about persons involved in discrete actions that Equifax took in response to Ms. Apodaca's disputes with Equifax.

The requests are not unduly burdensome. The number of Equifax employees who worked on the reinvestigations is likely to be a manageable number. Also, Equifax need only provide the full name and the location information of the third party business it contracted with to reinvestigate the bankruptcy that Equifax incorrectly reported.

## III. Ms. Apodaca Is Entitled to Information About Other Similar Claims Against Equifax (Interrogatory No. 7)

In Interrogatories No. 7, Ms. Apodaca requests information concerning lawsuits and administrative complaints involving claims similar to hers, made by others against Equifax. Ms. Apodaca's claims concern Equifax's reporting of accounts not belonging to Ms. Apodaca on her credit file, including claims for violations of the FCRA.

Equifax refuses to provide the requested information. It argues that Interrogatory No. 7 is vague, over broad, unduly burdensome and not relevant. It also argues that it should not have to respond because "lawsuits are a matter of public record."

### A. Information About Other Similar Claims Is Relevant

#### 1. Evidence About Similar Claims Will Help Ms. Apodaca Show that Equifax Acted Willfully

Information about similar claims is relevant. Evidence that others complained about the very same practices at issue in this case is relevant to prove that Equifax acted willfully. Ms. Apodaca seek punitive damages from Equifax under the FCRA. *See*, complaint, ¶ 47. The

FCRA provides for punitive damages if the violation is willful. *See*, 15 U.S.C. § 1681n(a)(2).

Evidence that Equifax treated others like it treated Ms. Apodaca is admissible under FRE 404(b) to show intent. Evidence of conduct in similar transactions occurring either before or after the subject transaction is admissible to show intent, knowledge and absence of mistake. *See*, 37 Am.Jur.2d, Fraud and Deceit 456; *Edgar v. Fred Jones Lincoln-Mercury of Oklahoma City, Inc.*, 524 F.2d 162 (10th Cir. 1975). Evidence of similar wrongful conduct should be admitted into evidence, because even if the evidence is prejudicial, it is highly probative of intent (in this case, intent to defraud). *See*, *Turley v. State Farm*, 944 F.2d 669, 673 (10th Cir. 1991) (court reversed for refusal to admit Rule 404(b) evidence in a civil case); *Wyman v. Terry Schulte Chevrolet*, 585 N.W.2d 103 (S.D. 1998); *United States v. Asher*, 178 F.3d 486 (7th Cir. 1999).

### 2.   Evidence About Similar Claims Will Help Ms. Apodaca Show Entitlement to Punitive Damages

In *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574, the United States Supreme Court held that "[p]erhaps the most important indicum of the reasonableness of a punitive damages award[,] is the degree of reprehensibility of the defendant's conduct." "The flagrancy of the misconduct is thought to be the primary consideration in determining the amount of punitive damages." *Id.*, n.23. The United States Supreme Court made clear that ***repeated misconduct is more reprehensible than an individual instance of malfeasance.*** *Id.* at 578 (emphasis added). The New Mexico federal district court interprets *Gore* to mean that plaintiffs must be allowed access to evidence of similar misconduct to prove their claim for punitive damages. *See*, *Salmeron v. Highlands Ford Sales, Inc.*, 220 F.R.D. 661, 670 (D. N.M. 2003). The New Mexico Supreme Court agrees. *See*, *Aken v. Plains Electric Generation &*

*Transmission Cooperative*, 132 N.M. 401, 409, 49 P.3d 662, 670 (N.M. 2002).

In *Salmeron, supra*, this Court determined that evidence that other customers had suffered similar treatment by the defendant "is highly relevant." *Id.* at 670.

> Ms. Salmeron seeks to discover the identity of the other customers to whom Highlands Ford sold rental vehicles so that she may interview them to determine whether Highlands Ford failed to disclose information or made misrepresentations to these customers as she alleges Highland Fords [did] to her. Evidence that Highlands Ford failed to make disclosures or made misrepresentations to other customers would enable Ms. Salmeron to establish that Highlands Ford acted intentionally and/or that Highlands Ford's actions were part of a pattern and practice rather than the result of an innocent or isolated mistake. Without evidence of similar failures to disclose or misrepresentations, it would be virtually impossible for Ms. Salmeron to meet her burden of proving intentional behavior by clear and convincing evidence or to establish a pattern and practice to supprt an award of punitive damages. Access to Highlands Ford's other customers is necessary in order for Ms. Salmeron to gather such evidence, if it exists.

*Id.* at 671.

Numerous New Mexico judges, both state and federal, have ruled this same way, compelling production of documents and answers to interrogatories pertaining to a defendant's similar treatment of other customers. *See, Tapia v. Chris King d/b/a King Motors*, No. CV-04-188 (Sandoval County District Court Nov. 16, 2004) (Hon. George Eichwald) (attached as Exhibit I); *Damian v. D.W.B.H., Inc., d/b/a Santa Fe Nissan*, No. CV-03-1213 (Santa Fe County District Court Sept. 23, 2004) (Hon. Carol Vigil) (attached as Exhibit J); *Salinas v. Karl Malone Corporation – Albuquerque*, No. CV-03-4670 (Bernalillo County District Court June 1, 2004) (Hon. Theresa Baca) (attached as Exhibit E); *Mallon v. Keenan*, No. 03-CV-1873 (Bernalillo County District Court Feb. 6, 2004) (Hon. Ted Baca) (attached as Exhibit K); *Ramirez v. 3-L Land Home, L.L.C.*, No. CV-03-722 (Torrance County District Court Dec. 9, 2003) (Hon. Thomas Fitch) (attached as Exhibit L); *Hernandez v. Enchantment Auto Sales, Inc.*, No. 02-CV-

7

1399 (D. N.M. Apr. 29, 2003) (Hon. Robert Scott) (attached as Exhibit M); *McAlpine v. Zangara Dodge, Inc.*, CV-02-6503 (Bernalillo County District Court Apr. 3, 2003) (Hon. Susan Conway) (attached as Exhibit N); *Lopez v. Zangara Dodge, Inc.*, No. CV-01-8629 (Bernalillo County District Court June 5, 2002) (Hon. William Lang) (attached as Exhibit H).

### B.     Interrogatory No. 7 Is Narrowly Tailored and Precise

Interrogatory No. 7 is not vague or overbroad. Interrogatory No. 7 is narrowly tailored to only seek information about similar cases: claims against Equifax under the FCRA concerning Equifax's reporting of accounts not belonging to the consumer on his or her credit file. The request is also limited to a reasonable time: claims in the last five years.

Interrogatory No. 7 is not unduly burdensome. The number of claims that fit within these narrow parameters is likely to be a manageable number.

### C.     This Information Is Not Equally Available to Ms. Apodaca

Equifax also argues that "lawsuits are a matter of public record." This argument does not allow Equifax to evade its discovery obligations. It would take Equifax much less effort to produce information about claims brought against it than the effort that would be required from Ms. Apodaca to conduct a jurisdiction-by-jurisdiction search of lawsuits brought against Equifax, plus inquiries to the Attorneys General of the 50 states and an inquiry to the FTC. Equifax is a national credit reporting agency with an extensive litigation history under the FCRA. It has a legal department that keeps track of the claims brought against it.

### IV.     Ms. Apodaca Is Entitled to Know the Basis for Equifax's Affirmative Defenses (Interrogatory No. 15)

In Interrogatory No. 15, Ms. Apodaca asks Equifax to describe the basis of each

8

affirmative defense it raises. Equifax refuses to answer. Equifax raises only one objection: that "Plaintiff has exceed [sic] the maximum number of interrogatories, inclusive of subparts, set forth in the Court's Scheduling Order."

## A.    This Court Did Not Impose the Limitation that Equifax Cites

Ms. Apodaca is unable to find this limitation in "the Court's Scheduling Order." Neither the Initial Scheduling Order nor the Initial Pretrial Order contain a limitation on interrogatories. The Provisional Discovery Plan ("PDP") agreed to by Equifax contains a limitation, but not the limitation cited by Equifax. The PDP states: "Maximum of 25 interrogatories by each party to any other party." *See*, PDP, § 2(e). In the December 14 letter, Ms. Apodaca pointed out to Equifax that the limitation it cites does not appear to exist. *See*, Exhibit B, December 14 letter. Equifax refused to respond.

## B.    Ms. Apodaca Has Not Exceeded 25 Interrogatories

Moreover, courts interpret interrogatory limitations that limit the number of interrogatories "including subparts" to require the counting of subparts separately only where the subparts are not logically linked to the question to which the subparts relate. *See*, *Kendall v. GES Exposition Services*, 174 F.R.D. 684, 685 (D. Nev. 1997); *Ginn v. Gemini Inc.*, 137 F.R.D. 320 (D. Nev. 1991); *Myers v. U.S. Paint Company*, 116 F.R.D. 165 (D. Mass. 1987); *Clark v. Burlington Northern Railroad*, 112 F.R.D. 117, 118 (N.D. Miss. 1986).

The drafters of the 1993 amendments to the Federal Rules of Civil Procedure intended to eliminate the gamesmanship that Equifax engages in here. FRCP 33(a), 1993 Advisory Committee's Note (emphasis added), states:

9

> Parties cannot evade [the numerical limit of interrogatories] through the device of joining as "subparts" questions that seek information about discrete separate subjects. *However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each communication.*

Each of the subparts that Ms. Apodaca sets forth logically is a subpart of the interrogatory to which the subparts relate. Thus, Ms. Apodaca's interrogatories only total 15 interrogatories.

## V.   Equifax Fails to Produce "Frozen Data Scans" for Ms. Apodaca's Credit File (Request for Production No. 1)

In Request for Production No. 1, Ms. Apodaca asks Equifax to produce documents "that comprise a complete audit trail" of her credit file. Equifax refuses to produce responsive documents. It claims that it does not maintain an audit trail.

Ms. Apodaca seeks documents that show the state of her credit file at discrete intervals of time. She believes that these documents exist for any credit file for which Equifax has performed reinvestigations. These documents result from the reinvestigation process. Sometimes these documents are called "frozen data scans." In the December 14 letter, Ms. Apodaca explained to Equifax that she sought production of the "frozen data scans." *See,* Exhibit B, December 14 letter. Equifax refused to respond.

## VI.  Equifax Fails to Produce the Maintenance Files for Ms. Apodaca's Credit File (Requests for Production Nos. 3 and 4)

In Requests for Production Nos. 3 and 4, Ms. Apodaca asks Equifax to produce documents that concern reinvestigations Equifax performed on her credit file. Equifax refers Ms. Apodaca to documents it produced as part of its Rule 26 initial disclosures. However, Equifax possesses more documents responsive to this request than the documents it has already produced.

Specifically, Equifax should have documents related to each ACRO Maintenance

Transaction Summary and each Maintenance Sheet Summary that it has already produced. The

ACRO Maintenance Transaction Summaries and the Maintenance Sheet Summaries summarize

other documents. *See*, Exhibit O, ACRO Maintenance Transaction Summary. These other

documents contain logs that detail each action taken as part of each reinvestigation. These

documents contain the label "M1–MTNC," and comprise the maintenance file for each

reinvestigation. In the December 14 letter, Ms. Apodaca explained to Equifax that she sought

production of these maintenance files. *See*, Exhibit B, December 14 letter. Equifax refused to

respond.

**VII.   Equifax Fails to Produce Its FCRA Compliance Manual Without Redaction (Request for Production No. 7)**

In Request for Production No. 7, Ms. Apodaca asks Equifax to produce documents that

set forth its reinvestigation procedures and its procedures for compliance with the FCRA.

Equifax omitted Request for Production No. 7 from its responses. However, under separate

cover, it did produce its Indicating Manual.

The Indicating Manual that Equifax produced is incomplete. Equifax has heavily

redacted this Manual. The portions of the Manual that are most relevant to Plaintiff's claims

appear to be the portions most heavily redacted. The table of contents for Module Four

(EIS0059) states that the section on "Bankruptcy Cleanup" starts on page 38. However, the

Module Four documents that Equifax produced end with page 37 (EIS0094). Also, Equifax has

redacted nearly all the text from the section entitled "Investigating an Item" (EIS–00024-25) and

from the section entitled "Suppression Procedures" (EIS0033-36). *See*, Exhibit P, Indicating

Manual.

Ms. Apodaca expects that Equifax will claim that its Indicating Manual contains trade secrets. Equifax may have waived this objection by failing to assert the objection in its discovery responses. If that is Equifax's concern, in order to avoid unnecessary disputes, Ms. Apodaca would be willing to enter into a reasonable protective order.

Ms. Apodaca circulated a proposed stipulated protective order to protect the documents she may produce. Discover approved this order. Ms. Apodaca then revised this protective order so that it covers documents produced by all parties. Discover has suggested revisions to the order, which Ms. Apodaca incorporated. Ms. Apodaca now waits for Discover's approval of the newly revised order. *See,* Exhibit Q, letter and proposed protective order. Equifax refuses to respond to the requests that it comment on this proposed order.

In the December 15 letter, Ms. Apodaca requested that Equifax provide comments on the proposed protective order and, once the order is entered, produce an unredacted and complete copy of the Indicating Manual and unredacted and complete copies of any other documents responsive to Request for Production No. 7. *See,* Exhibit B, December 15 letter. Equifax refused to respond.

## VIII.   Equifax Fails to Produce Its Contract with Discover (Request for Production No. 8)

In its responses, Equifax claims that Ms. Apodaca's Request for Production No. 8 states: "Produce all documents you reviewed or relied on in responding to all Interrogatories." Ms. Apodaca did not make this request. Instead, in Request for Production No. 8, Ms. Apodaca asked Equifax to:

12

Produce all documents that define the contractual relationship between Equifax and Discover. This request is limited to documents that define the relationship as it existed from January 1, 2003 until present.

In the December 14 letter, Ms. Apodaca pointed out this discrepancy and requested that Equifax produce documents responsive to Request for Production No. 8.  *See*, Exhibit B, December 14 letter.  Equifax refused to respond.

Ms. Apodaca agrees to hold the contract between Equifax and Discover as confidential pursuant to the protective order she proposes.  *See*, Exhibit B, December 15 letter.  Equifax refused to respond.

## IX.    Conclusion

Ms. Apodaca requests that the Court order Equifax to provide full and complete discovery responses to Interrogatories Nos. 7, 8, 9, 10, 11, 12, 14 and 15 and Requests for Production Nos. 1, 3, 4, 7 and 8, within 10 days of the order.


Respectfully submitted,

FEFERMAN & WARREN, Attorneys for Plaintiffs


ROB TREINEN
300 Central, S.W., Suite 2000 East
Albuquerque, New Mexico 87102
(505) 243-7773
(505) 243-6663 (fax)


I CERTIFY that a true and correct copy of the foregoing was served upon all counsel of record by mail on the _22_ day of December 2004.

ROB TREINEN

**THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN.  SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE...**